UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MATTHIS SCOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 3:19-cv-00528-GCS |
| ) | |
| JOHN BALDWIN, ) | |
| JACQUELINE LASHBROOK, ) | |
| FRANK LAWRENCE, ) | |
| WILLIAM QUALLS, ) | |
| MARC WILDBAHER, ) | |
| DAVID EVELSIZER, ) | |
| DENNIS YOUNG, ) | |
| RICHARD AKINS, ) | |
| JOHN KOCK, ) | |
| TYLER RICHERSON, and ) | |
| SHAUN GEE,[1] ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Matthias Scott, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), alleges that the housing situation at Menard Correctional Center has resulted in unconstitutional conditions of confinement, including severe overcrowding and a breakdown in the inmate classification system that causes inmates, including Scott, to be celled with inmates who are severely mentally ill and dangerous. Before the Court is a motion for summary judgment on the issue of exhaustion filed by Defendants John Baldwin, John Kock, Jacqueline Lashbrook, Frank Lawrence, William

---

[1] The Clerk of Court shall correct the name of Defendant Major Evelsizer to David Evelsizer and of Marc Wildbaher to Marc Wildhaber.

Qualls, Tyler Richerson, and Marc Wildhaber. Plaintiff responded to Defendants' motion, and the Court held an evidentiary hearing on August 24, 2020. For the reasons delineated below, the Court grants Defendants' motion.

### FACTUAL BACKGROUND

At all times relevant to his complaint, Plaintiff Matthias Scott was incarcerated at Menard Correctional Center ("Menard"). Defendant John Baldwin was the acting director of IDOC. Defendant Jacqueline Lashbrook was the warden at Menard before Defendant Frank Lawrence became the acting warden at some point in early 2019. Scott alleges that Baldwin, Lashbrook, and Lawrence were responsible for the administration of Menard and were aware of the dangerous conditions of confinement inmates faced, including severe overcrowding (Count 1). Defendants William Qualls, Marc Wildhaber, David Evelsizer, Dennis Young, Richard Akins, John Kock, Tyler Richerson, and Shaun Gee were correctional employees who, along with Baldwin, Lashbrook, and Lawrence, allegedly failed to protect Scott from a physical attack by his cellmate on March 30, 2019 (Count 2), and intentionally inflicted emotional distress by ignoring his requests for a new cellmate before the assault (Count 3).

Plaintiff attached three emergency grievances to his complaint that he claims he submitted but that went unanswered by prison officials. In a December 21, 2018 grievance, Scott complained that he was housed in a cell meant for one inmate with another inmate due to overcrowding and that he believed his cellmate was severely mentally ill. (Doc. 1, p. 35-36). He explained that he and his cellmate were having increasingly intense arguments and that he wanted to be moved to a different cell before

their arguments turned physical. Scott wrote that he had complained to the gallery officers, the sergeant, and the lieutenants, but he was told that he would not be moved unless they had a physical altercation. The grievance was not reviewed as an emergency by the Chief Administrative Officer ("CAO"), nor was it submitted as a non-emergency for review by a counselor, grievance officer, and the CAO.

Scott's complaint includes two letters to Defendant Lashbrook dated December 27, 2018, and January 8, 2019. (Doc. 1, p. 37-38). The letters request a status update on the December 21, 2018 emergency grievance. On January 3, 2019, Scott wrote to the west house major and the "7 to 3" sergeant. (Doc. 1-1, p. 1-2). These letters do not reference his December 2018 emergency grievance or the letter to Defendant Lashbrook. The letters to the major and sergeant dated January 3, 2019 are also not mentioned in Scott's January 8, 2019 letter to Lashbrook or in his later grievances.

Scott also attached an emergency grievance dated January 8, 2019, to his complaint. (Doc. 1, p. 39-40). It referenced the December 2018 grievance and the two letters to Lashbrook. Like the December grievance, the January 8, 2019 grievance also explains that Scott spoke with his gallery officers, the sergeant, the lieutenant, and the major about his desire to be moved to a new cell. There is no evidence of a response to this grievance by a grievance officer or of emergency review by the CAO.

In a February 6, 2019 grievance, Scott claimed that he was told by "the West House Officers" that he would not be safe if he did not fight his cellmate. He explained that his cellmate had mental health issues and was threatening to fight him, so Scott asked to be moved, explaining that he was forced into an unsafe cell assignment due to severe

overcrowding. (Doc. 1-1, p. 3). Scott marked the grievance as an emergency, but it was not reviewed by the CAO to determine whether it raised an emergency. There is no response from a counselor, a grievance officer, or the CAO.

In addition to the February 6, 2019 grievance, Scott attached several letters to his complaint, which were purportedly written in February 2019 and concerned the risk he faced from his cellmate. In a February 9, 2019 letter to John Baldwin, he mentions talking to gallery officers, the sergeant, the lieutenants, the major, and the counselors about his desire to move a different cell. (Doc. 1-1, p. 5-7). He also mentions the emergency grievances and letters he sent to Defendant Lashbrook. Scott also attached three February 2019 letters to Defendant Lawrence. (Doc. 1-1, p. 8-10). The letters to Lawrence reference his February 6, 2019 grievance and seek a response to the grievance. They do not mention the December 2018 or January 2019 grievances.

The records of the Administrate Review Board ("ARB") submitted by Defendants (Doc. 39-1) contain two grievances filed by Scott. On October 18, 2018, Scott filed a grievance about personal property that was missing after he was transferred to Menard. He filed a similar grievance on November 4, 2018, as well. A grievance counselor responded to the October grievance, but there is no response from a counselor or from the Chief Administrative Officer ("CAO"). The November grievance does not show a response from a counselor, a grievance officer, or the CAO. The ARB responded to the grievances on November 14, 2018, indicating that additional information was needed, to wit: the responses from a counselor, the grievance officer, and the CAO. The ARB also

deemed the grievances misdirected because personal property issues were to be reviewed at the inmate's facility before being appealed to the ARB.

The Court held an evidentiary hearing on August 24, 2020. At the hearing, Scott testified that he was familiar with the grievance process at Menard, though he later testified that he was unaware of how to submit non-emergency grievances, despite having done so with his missing property grievances. Grievances at Menard, including emergency grievances, are supposed to be submitted using a box in each cell house, rather than through institutional mail. When the cell house is on lockdown, correctional officers bring the box around to the cells for inmates to submit their grievances. Scott testified that he submitted the December 2018 grievance using the grievance box, but he said that he submitted the other two emergency grievances using the mail.

Scott was asked whether he knew that there was a log of inmate letters or kites, and he testified that he did not know that. He was asked if he knew why his letters did not appear in the kite log, but he did not know. He also testified that he did everything he could to be moved to a new cell, but he first said that he did not tell his counselor of his concerns. He later said he did talk with his counselor but was told the counselor had no control over cell assignments. He testified that if the reports of his conversations with his counselor on January 3, January 9, and March 6 showed that he reported no issues, then that information was incorrect.

The Court also heard testimony from Yvette Baker, a grievance officer. She explained that when grievances are submitted using the grievance box as opposed to through the mail, it allows for better tracking by the institution. As each grievance is

removed from the box, it is given a grievance number and is logged immediately. The system of assigning a number and logging each grievance as it is removed from the box is meant to ensure that grievances are not lost. If a grievance with an assigned number does not show a response in the log, then officials can easily follow-up on the status of it with the person who should be reviewing it. She testified that if the grievance office received Scott's three grievances, then he would have received responses to them.

## LEGAL STANDARDS

Summary judgment is "proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The Act states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added).

Generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility or to determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). In *Pavey*, however, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to

exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey*, the Seventh Circuit set forth procedures for a court to follow in a situation where failure to exhaust administrative remedies is raised as an affirmative defense. The Seventh Circuit stated the following:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate.  (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.  (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will

> proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey*, 544 F.3d at 742.

As an inmate confined within the Illinois Department of Corrections ("IDOC"), Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims properly. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The grievance officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The

Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. *See* 20 ILL. ADMIN. CODE § 504.850(a). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures also allow an inmate to file an emergency grievance. *See* 20 ILL. ADMIN. CODE § 504.840. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine that] there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender [such that] the grievance [should] be handled on an emergency basis." 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an

emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender indicating what action shall be or has been taken." 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process."  20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

## ANALYSIS

Neither of the grievances in the Administrative Review Board's files exhaust Scott's claims in this action. They involve unrelated complaints about property lost during Scott's transfer to Menard, and, while they show a response from his counselor, they do not contain responses from the grievance officer or the CAO prior to their submission to the ARB.  Similarly, Plaintiff's letters to various Menard and IDOC officials do not exhaust his claims in this action. The grievance procedures are clear that inmates must use the grievance forms provided by a correctional facility. *See* 20 ILL. ADMIN CODE § 504.810. A letter does not take the place of following an institution's grievance procedures, so the letters alone cannot exhaust Plaintiff's claims.

Looking at the record as a whole, the Court finds that there are too many inconsistencies to conclude that Plaintiff submitted his three emergency grievances and that prison officials failed to respond to them, rendering Plaintiff's administrative remedies unavailable. Yvette Baker's credible testimony established that the likelihood

of losing three emergency grievances accidentally is low, and, not only is there no record of Plaintiff submitting his emergency grievances, there also is no credible evidence suggesting that he sent the letters attached to his complaint to their designated recipients.

When asked why his letters did not appear in the kite log, Scott did not have an answer. He also did not answer the undersigned's questions about why certain pertinent information about his earlier letters and grievances and the very existence of such letters and grievances were left out of some writings but not others. These inconsistencies lead the Court to believe that Scott's letters and grievances were not submitted through proper channels. Nor were they submitted in a manner that allowed Defendants to respond meaningfully to Scott's complaints. Additionally, Scott testified that, of his emergency grievances attached to his complaint, only the December 21, 2018 grievance was filed using the designated grievance box in his cell house. *See* 20 ILL. ADMIN. CODE § 504.810(c) (requiring grievance forms to be submitted to the designated repositories).

Based on the record as it stands, the Court concludes that Scott did not exhaust his emergency grievances fully. Scott was not prevented from doing so by actions taken by Defendants, and the grievance process was available to Scott during the time period in which he had issues with his cellmate. He did not avail himself of it in a manner that comports with IDOC procedures.

The Court notes that Defendants Akins, Evelsizer, Gee, and Young had not been identified at the time Defendants Baldwin, Lashbrook, Lawrence, Kock, Qualls, Richerson, and Wildhaber filed their motion for summary judgment on the issue of exhaustion in December 2019. Nonetheless, the reasoning in this Order extends to the

claims against the newly identified Defendants, as Scott's claims against them are identical to his claims against the moving Defendants. As Scott has not exhausted his claims in this action, the Court finds that dismissal of all claims against all Defendants is appropriate at this time.

## CONCLUSION

For the above-stated reasons, Defendants' motion for summary judgment on the issue of exhaustion (Doc. 38) is **GRANTED**. This action shall be **DISMISSED without prejudice** in its entirety due to Plaintiff's failure to exhaust administrative remedies prior to filing suit. The Clerk of Court shall enter judgment of dismissal and shall close this case.

**IT IS SO ORDERED.**

Dated: September 11, 2020.

Digitally signed by Judge Sison 2
Date: 2020.09.11 13:07:48 -05'00'

GILBERT C. SISON
United States Magistrate Judge